Irving I. BASS, Trustee in Bankruptcy of Zipco, Inc., a Corporation, Bankrupt, Appellant,

v.

Robert H. SHUTAN, Appellee.

No. 15938.

United States Court of Appeals Ninth Circuit.

Sept. 29, 1958.

Craig, Weller & Laugharn, William E. Bartley, Joseph S. Potts, Jr., Andrew F. Leoni, Thomas S. Tobin, Hubert F. Laugharn, Frank C. Weller, Los Angeles, Cal., for appellant.

Robert H. Shutan, Beverly Hills, Cal., for appellee.

Before ORR, CHAMBERS, and BARNES, Circuit Judges.

ORR, Circuit Judge.

Zipco Inc., a corporation, found itself in financial difficulties. Milo M. Turner at the time was its sole shareholder, director, president, and general manager. Prior to the institution of bankruptcy proceedings certain checks were issued by the corporation in payment of wage claims. The checks were dishonored by the bank upon which they were drawn because of insufficiency of funds. Turner, as an individual, and not in any connection with the corporation secured funds and paid to the individuals holding the checks the amounts thereof. He took in return an assignment of the checks.[1]

The financial condition of the corporation continued to deteriorate and it was decided to petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. This action required the service of an attorney. Turner consulted appellee Shutan who agreed to undertake the work for the sum of $1,500.

Turner was without funds to pay said amount so it was decided that Turner assign to Shutan the checks representing the amount of the wage claims which Turner had paid.

The petition for arrangement under Chapter XI was prepared by Shutan and filed. The corporation was adjudicated a bankrupt on May 11, 1956.

Shutan, in due course filed a timely priority wage claim under section 64, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(2) which was objected to by the Trustee, who also questioned the reasonableness of the charge for the legal services rendered.

In sustaining the objection of the Trustee the Referee held that Turner was the alter ego of the Bankrupt Corporation and further that even though the alter ego contention be rejected the claims of Turner and any assignee under him should be subordinated in equity and good conscience.

The Trial Court recognizing that it should follow the findings of fact of the Referee unless clearly erroneous decided that notwithstanding such a duty that with the adoption of "all the underlying facts supporting the referee's conclusions they are still insufficient in law to establish the relationship by which the bankrupt corporation is to be regarded as the alter ego of Milo M. Turner. The mere fact that all the corporate stock is held by one person who exercises sole control over the corporation is insufficient to justify disregarding the corporate entity." With this conclusion of the Trial Court we agree.

We further agree with the Trial Court that under California law "before a court may disregard the fiction of separate corporate existence it must appear that:

" 'the observance of the fiction would, under the circumstances, sanction a fraud or promote injustice. Bad faith in one form or another must be shown * * *.' Hollywood Cleaning & Pressing Co. v. Hollywood Laundry Service, 217 Cal. 2d 124, 129, 17 P.2d 709, 711."

We do not believe that in a case such as this anything less than that required to establish alter ego can justify subordinating of a claim solely as a matter of equity. Appellant cites Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 247, 84 L.Ed. 281. The quotation he

---

1. There was no specific assignment of the priorities evidenced by the wage claims. This point was not raised in the case and we express no opinion as to the necessity thereof.

makes from that case implies that a violation of the rules "of fair play and good conscience" be shown which was not done in the instant case. Appellant argues that the most recent California District Court of Appeal case, Riddle v. Yosemite Creek Co., Cal.App.1958, 322 P.2d 538, indicates a trend away from the requirement of bad faith of actual fraud. Even so, there is no lessening of the requirement that the normal priority result in an injustice before the order of claims will be changed. In the Riddle case the court states at page 544 of 322 P.2d that "the test is whether or not the individuals ought in justice to be held or, conversely, whether or not releasing them from the asserted liability would *work an injustice* on those who dealt with the corporations." (Emphasis added.)

The allowance of priority to appellee's claim would work no injustice to the estate. On the contrary, the estate is benefited by the procedure used here. The money furnished by Turner to pay wage claims is not returned to him and the security which he received in the form of checks paid attorney's fees for the bankrupt. Hence the estate pays one amount whereas it otherwise would have paid two, wage claims and attorney fees.

The wage claims here involved are assignable and carry with them their priority into the hands of an assignee.[2] Shropshire Woodliff & Co. v. Bush, 1907, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436. The fact that the assignee is a shareholder of the bankrupt is immaterial in absence of factors showing that this would create some special inequity. In re Dorr Pump & Mfg. Co., 7 Cir., 1942, 125 F.2d 610. Appellant seeks to distinguish this case on the ground that in the present case there was only one shareholder, while in the Dorr case there were several shareholders who purchased the wage claims. The Dorr case is bottomed on the theory that the assignment placed the shareholders in the shoes of the wage-earners as assignees and not as sub-

rogees and that since the shareholders had no legal obligation to pay the wage claims they were in the same position as any stranger who became an assignee. We cannot see that the fact that Turner was the sole shareholder makes any difference since as we have held, he was not the alter ego of the corporation.

The Hollywood case supra, and the case of Norins Realty Co. v. Consolidated A. & T. Co., 1947, 80 Cal.App.2d 879, 182 P.2d 593 support the conclusion that in the absence of injustice the corporate veil will not be pierced so as to make Turner's personal funds, separately raised, the property of the corporation solely because he was the only shareholder, director, and officer.

Judgment affirmed.

---

2. Three of the checks were for Turner's own wages. No effort was made to distinguish those checks as to legal consequence.