**In re INTERNATIONAL AUTOMATED MACHINES, Debtor.**

**Bankruptcy No. B79–101.**

United States Bankruptcy Court,
N. D. Ohio, W. D.

July 23, 1981.

George E. Ferstle, Ferstle & Gouttiere, Toledo, Ohio, for plaintiff.

M. Marsh McJunkin and John S. Dorrell, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came to be heard upon Debtor's Objection to the Proof of Claim of Blue Cross-Blue Shield, No. 245. Appearing at the hearing were George Ferstle, Attorney for the Debtor-Objector I.A.M., Inc., and M. Marsh McJunkin and John S. Dorrell, Attorneys for claimant Blue Cross-Blue Shield (hereafter Blue Cross). All parties agree to this Court's determination of the issue based upon the testimony of the witnesses, the evidence introduced, and the cases submitted to the Court by the parties at the hearing.

The pertinent facts found by the Court are the following:

1.) I.A.M., Inc. entered into a contract with Blue Cross for a group medical benefit plan on January 1, 1978.

2.) The employees subscribed to this group plan by completing application cards with data such as their names, addresses, and other relevant information. Nowhere on the cards is a statement indicating consent to an assignment of wages by the employees.

3.) The employer was to contribute 60% to the plan and the employees were to contribute 40%.

4.) I.A.M., Inc., filed its petition in bankruptcy on January 31, 1979.

5.) A proof of claim was filed on behalf of Blue Cross in the amount of $10,407.36.

The issue presented is whether to treat the claim of Blue Cross as a wage priority or whether it should be considered a general unsecured claim.

During the hearing, a dispute arose as to whether or not the contract between I.A.M., Inc. and Blue Cross was legally in force. That question, however, need not be answered for the purposes of resolving the issue of priority.

Blue Cross asserts their priority under Section 64(a)(2) of the Bankruptcy Act, which states in pertinent part the following:

"a. [t]he debts to have priority . . . shall be . . .

(2) wages and commissions, not to exceed $600 to each claimant, . . . earned within three months before the date of the commencement of the proceeding. . . ."

Blue Cross further argues that if they are not entitled to 100% of their claim as priority, they should at least be entitled to priority on the 40% contributed by the employees wages.

The controlling cases on this subject are *United States v. Embassy Restaurant, Inc.*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959) and *Joint Industry Board v. United States*, 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968). In *United States Embassy*, the Court held that contributions by an employer to a union welfare fund required by a collective bargaining agreement to be paid to trustees were not entitled to priority as being wages due to workmen under § 64(a)(2) of the Bankruptcy Act. This priority status was similarly denied to an employee's annuity plan in *Joint Industry*.

The Court defined wages narrowly by stating that they are direct payments to employees, and that any benefits received under the plans involved were not wages due to the employees according to § 64(a)(2). In these cases, the Court clearly states that any contributions made by an employer should only be entitled to a general priority status.

The Court in the *Matter of Weiss Securities, Inc.*, 20 C.B.C. 325 (S.D.N.Y.1979) dealt with the question whether or not deductions from an *employee's* salary for insurance benefits deserve priority status under § 64(a)(2). In resolving this question, the Court looked to the reasoning expressed in *Shropshire, Woodliff & Co. v. Bush*, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436 (1906). The Court in *Shropshire*, at 189, 27 S.Ct. at 178, referred to wages as a description of the nature of the debt to which priority is given. Further indicated was "[w]hen one has incurred a debt for wages due to workmen, clerks, or servants . . . the priority is attached to the debt and not to the person of the creditor. . . ." There the employees assigned their right to the wages, to which the Court stated that the "character of the debts was fixed when they were incurred and could not be changed by an assignment." Thus, if a valid assignment was made, the character of the debt would follow the debt to the assignee.

Assignments of wages in Ohio are governed by Ohio Revised Code Section 1321.31, which in pertinent part the following:

"No assignment of, or order for, wages or salary is valid unless made in writing by the person by whom the said wages or salary are earned. . . ."

No evidence was introduced at the hearing of any writings showing a wage assignment by the employees. The application cards completed by the employees revealed no wage assignment by their terms. This Court concurs with the conclusion made by Judge Babitt in a very similar situation in *Weiss* (supra). There the Court concluded that under State law, the application cards signed by the employees electing the insurance coverage and allowing the payroll deduction did not constitute a valid wage assignment. The New York statute, like Ohio, required a written consent form evidencing the assignment. A payroll deduction does not necessarily meet the legal requirements of a wage assignment. When a valid wage assignment has been made, then by law, the priority status may attach to the assignee. *Local 140 Security Fund v. Hack*, 242 F.2d 375 (2nd Cir.

1957), cert. denied, 355 U.S. 833, 78 S.Ct. 51, 2 L.Ed.2d 45 (1957). According to Ohio law, no valid written wage assignment was made. Therefore, priority status does not attach to Blue Cross.

Blue Cross argues further that the employee contributions should be labeled wages as justified by the purposes set forth under ERISA. It is indicated that the policy of ERISA is to protect the interest of participants in private pension plans and their beneficiaries. (See 29 U.S.C. § 1001.) Further, nonpayment by any employer will injure all the employees for whom the plan was implemented under ERISA. However, this Court concurs with the position held in the *Matter of Standard Cellulose & Novelty Co., Inc.,* 14 C.B.C. 63 (S.D.N.Y.1977) in which there is a confrontation of the same issue.

> "The meaning of a term in another context in other legislation is inappropriate to the construction of the term in the Bankruptcy Act. The latter has its own purposes in achieving societal good. It has its own policy and the objects of Congress' concerns in such Act are not necessarily at one with the objects of Congressional solicitude in another. Among the impulses of the Act is equal treatment of creditors. In consequence, the addition of creditors to the given priority is not to be made except where to do so would be in keeping with Congress' mood in conferring priority...."

There very well may be a tension between the Bankruptcy Act and ERISA. However, in as much as, the Supreme Court refrained from extending the interpretation of § 64(a)(2) in *Embassy Restaurant* and *Joint Industry, supra.* We will refrain as well.

It is therefore

ORDERED, ADJUDGED AND DECREED that the claim of Blue Cross for $10,407.36 is not to be given a priority status; the objection of the Debtor is sustained.